IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
JUDGE WALKER D. MILLER

Civil Action No. 07-cv-01102-WDM-MEH

EUGENE QUINTANA,

    Plaintiff,

v.

CHUCK CONNER, in his official capacity as Secretary of the United States Department of Agriculture,

    Defendant.

## ORDER ON MOTION TO DISMISS

Miller, J.

This matter is before me on Defendant's Motion to Dismiss Second Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(1) and (6) (Docket No. 32). After a review of the pleadings and the parties' written arguments, I conclude oral argument is not required. For the reasons that follow, the motion shall be granted in part and denied in part.

### Background[1]

This case arises out of Plaintiff's employment relationship with the United States Department of Agriculture ("USDA"). Plaintiff is a Hispanic male. Beginning in 1974 Plaintiff was employed by Defendant as a civil engineering technician in the engineering section of the Rio Grande National Forest, a division of the USDA. Plaintiff initially

---

[1] All relevant facts are taken from the Complaint or Plaintiff's Response to the Motion to Dismiss.

worked in the facilities section but later transferred to the trails section for which he coordinated trails construction for both the Rio Grande National Forest and the San Juan National Forest. In the trails section Plaintiff was responsible for any and all "blasting"—the detonation of explosives. The United States Forest Service utilizes a certification process for its blasters under which certification is based on knowledge, training, experience, and testing. The certificate indicates the different levels of blasting for which the person is certified for, is recommended by the Regional Blaster Examiner, and is signed by the Forest Supervisor. Plaintiff maintains that the possession of a blaster's certificate is a "valuable employee asset in that it provides access to expanded work opportunities, promotions, increased pay and additional benefits." (2d Am. Compl. ¶ 12.) Plaintiff first became a certified blaster in 1978 and worked as a forest blaster until 1990.

In 1990 Plaintiff was promoted to Regional Blaster Examiner for Region 2, which includes eleven national forests and grasslands. Plaintiff resigned this post in 1999 because the position included an increased workload without a corresponding increase in pay. He kept his "status and responsibility", however, for his continued employment with the trails department of the Rio Grande National Forest. *Id.* ¶ 7. After Plaintiff resigned as the Regional Blaster Examiner for Region 2, Gary Frink, a former trainee of Plaintiff, took the position. As the Regional Blaster Examiner, Frink "shunned Plaintiff", requested Plaintiff give his blasting machine back, changed the locks on the explosive and detonator magazine without notice to Plaintiff, and denied Plaintiff the permits required to use and transport explosives. *Id.* ¶ 29.

Plaintiff's main contention, however, is that Frink denied him re-certification as a

blaster.  Part of the responsibilities of the Regional Blaster Examiner are to maintain a list of certified blasters, notify blasters of required training sessions, and obtain and forward applications for certification.  Frink, however, did not notify Plaintiff of a mandatory training session in May 2002.  Nevertheless, Plaintiff learned of the training session from another source and was able to attend.  Although Frink issued a number of certifications over the next two years, he did not issue one to Plaintiff despite Plaintiff's qualifications.  In May 2004, Plaintiff discovered that Frink had also not issued certifications to the only other Hispanic males in the Rio Grande National Forest unit, Joe Valdez and Floyd Jaramillo.  This knowledge caused Plaintiff to believe, allegedly for the first time, that he had been denied blaster certification based on his national origin, Hispanic.

On June 8, 2004, Plaintiff filed an informal charge of discrimination with the Forest Service Civil Rights Employment Complaint Department.  Attempts to resolve the issue were made between the filing date and September 9, 2004 but were unsuccessful.  Therefore, on September 9, 2004 Plaintiff received a Notice of Right to File authorizing him to file a formal charge of discrimination.  Plaintiff filed the formal charge on September 28, 2004 with the USDA Office of Civil Rights Employment Complaints Division "alleging that Defendant had discriminated against him because of his national origin (Hispanic) by the failure or refusal to certify Plaintiff as a blaster." *Id.* ¶ 40.  The Equal Employment Opportunity Commission ("EEOC") rejected Plaintiff's claim on timeliness grounds and denied his subsequent appeal and motion for reconsideration.  On February 23, 2007, Plaintiff received a formal denial of his motion for reconsideration and a Right to File Civil Action.  Plaintiff filed this lawsuit on May 24,

2007.

## Standard of Review

Defendant's motion to dismiss raises both a jurisdictional challenge under Fed. R. Civ. P. 12(b)(1) and a Fed. R. Civ. P. 12(b)(6) challenge. A plaintiff who sues in federal court has the burden of establishing federal jurisdiction to hear the claim. *See Marcus v. Dep't of Revenue*, 170 F.3d 1305, 1309 (10th Cir. 1999) ("Because the jurisdiction of federal courts is limited, 'there is a presumption against our jurisdiction, and the party invoking federal jurisdiction bears the burden of proof.'" (quoting *Penteco Corp. v. Union Gas Sys., Inc.*, 929 F.2d 1519, 1521 (10th Cir. 1991))). Motions to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) can be in one of two forms. *Maestas v. Lujan*, 351 F.3d 1001, 1013 (10th Cir. 2003) (citing *Stuart v. Colo. Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001)). First, the moving party may "facially attack the complaint's allegations as to the existence of subject matter jurisdiction." *Id.* "In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true." *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995) (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990)). Second, the moving party may "go beyond allegations contained in the complaint by presenting evidence to challenge the factual basis upon which subject matter jurisdiction rests." *Maestas*, 351 F.3d at 1013 (citing *Stuart*, 271 F.3d at 1225). In this case, "a district court may not presume the truthfulness of the complaint's factual allegations." *Holt*, 46 F.3d at 1003. Rather, the court may look to affidavits and other documents outside the pleadings and such reliance does not convert the motion to a Rule 56 motion for summary judgment. *Id.*

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) alleges that the complaint fails "to state a claim upon which relief can be granted." A complaint must be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1974 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* The court must accept as true all well-pleaded facts and construe all reasonable allegations in the light most favorable to the plaintiff. *United States v. Colorado Supreme Court*, 87 F.3d 1161, 1164 (10th Cir. 1996).

## Discussion

1. Exhaustion of Remedies

Defendant moves for dismissal pursuant to Fed. R. Civ. P. 12(b)(1) based on Plaintiff's alleged failure to exhaust his administrative remedies prior to filing this lawsuit. First, Defendant argues that Plaintiff did not exhaust his administrative remedies with respect to any claim based on Frink's "shunning" of him, request for return of blasting equipment, and changing of locks because Plaintiff failed to allege these complaints in his informal or formal complaints. Plaintiff does not address this argument in his response. I agree with Defendant.

Generally, a plaintiff must exhaust administrative remedies with the EEOC prior to filing a Title VII claim in federal district court. *Simms v. Oklahoma ex. rel., Dep't of*

*Mental Health and Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999); *Jones v. Runyon*, 91 F.3d 1398, 1400 n.1 (10th Cir. 1996). "Thus, a plaintiff normally may not bring a Title VII action based upon claims that were not part of a timely-filed EEOC charge for which the plaintiff has received a right-to-sue letter." *Simms*, 165 F.3d at 1326. Furthermore, "each discrete incident of [discriminatory] treatment constitutes its own 'unlawful employment practice' for which administrative remedies must be exhausted." *Martinez v. Potter*, 347 F.3d 1208, 1210 (10th Cir. 2003) (citing *Nat'l R.R. Passenger Corp. V. Morgan*, 536 U.S. 101, 110–13 (2002)).[2]

In this case, Plaintiff did not include his claims regarding shunning, request for blasting equipment, changing locks, or denial of permits necessary to use or transport explosives[3] in his formal complaint with the EEOC. Therefore, I conclude that Plaintiff has failed to exhaust his administrative remedies with respect to these allegations and is now barred from basing any claim upon these allegations.

Second, Defendant argues that Plaintiff's claim based on Frink's failure to

---

[2] This is a change from prior Tenth Circuit precedent which held that a judicial complaint may include discriminatory acts not included in the EEOC charge if those acts were "like or reasonably related to" the allegations in the EEOC charge. *Martinez*, 347 F.3d at 1210 (discussing the impact of *Morgan* on the "continuing violations" doctrine).

[3] Although Defendant does not argue that Plaintiff failed to exhaust his administrative remedies with respect to the denial of permits, because it is a jurisdictional issue, *see Shikles v. Sprint/United Mgmt. Co*, 426 F.3d 1304, 1317 (10th Cir. 2005), I must address the issue before I may address the merits of the claim. *See Cudjoe v. Independent Sch. Dist. No. 12*, 297 F.3d 1058, 1063(10th Cir. 2002). While exhaustion of remedies with respect to *timely* filing an EEOC charge is not a jurisdictional issue, *see Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982), exhaustion of remedies with respect to alleging the bases for a charge of discrimination is a jurisdictional issue in this Circuit, *Shikles*, 426 F.3d at 1317.

provide him with a blaster certification must be dismissed for failure to exhaust administrative remedies. Defendant contends that because Plaintiff did not contact an Equal Employment Opportunity ("EEO") Counselor within forty-five days of his denial of certification, this Court does not have jurisdiction to hear the claim. *See* 29 C.F.R. § 1614.105(a)(1) (requiring initial consultation with an EEO Counselor for all discrimination claims against an executive agency). However, the Tenth Circuit does not view timely initiating contact with a Counselor as a jurisdictional requirement. *Beene v. Delaney*, 70 Fed. Appx. 486, 490 (10th Cir. 2003) (unpublished)[4] ("[C]ompliance with the forty-five day time limit in § 1614.105(a)(1) is not a jurisdictional requirement for filing suit under Title VII." (citing *Sizova v. Nat'l Inst. Of Stds. & Tech.*, 282 F.3d 1320, 1324 (10th Cir. 2002)); *see Zipes*, 455 U.S. at 393 ("[F]iling a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court. . . ."); *Jones*, 91 F.3d at 1400 n.1 (distinguishing between filing an EEOC charge, which is a jurisdictional requirement in the Tenth Circuit, and *timely* filing an EEOC charge, which is not a jurisdictional requirement). Therefore, Defendant's argument for dismissal must be analyzed under Fed. R. Civ. P. 12(b)(6) rather than 12(b)(1). *See Beene*, 70 Fed. Appx. at 490.

In response to Defendant's argument, Plaintiff argues that he did not suspect a discriminatory animus until mid-May 2004 when he learned that two other Hispanic blasters were also not certified. Thereafter, he contacted the Counselor within the

---

[4] Although the Tenth Circuit does not allow citation to unpublished opinions for precedential value, unpublished opinions may be cited for persuasive value. 10th Cir. R. 32.1.

prescribed 45 days.  Plaintiff argues that because he did not know and reasonably should not have known of the discriminatory nature of the failure to certify him until mid-May 2004, the 45 day deadline was tolled until that time.  I agree.

Plaintiffs who allege discrimination by an executive agency, as defined in 5 U.S.C. § 105 to include executive departments, must first consult with an EEO Counselor "prior to filing a complaint in order to try to informally resolve the matter."  29 C.F.R. § 1614.105(a).  Contact must be initiated with the EEO Counselor "within 45 days of the date of the matter alleged to be discriminatory" (hereinafter "the 45-day deadline).  *Id.* § 1614.105(a)(1).  This and other deadlines have been construed as statutes of limitations and as such subject to waiver, estoppel, and equitable tolling. *See Hanlen v. Henderson*, 215 F.3d 1336, 2000 WL 628205, at *3 (10th Cir. May 16, 2000) (unpublished) (addressing the 45-day deadline); *Zipes*, 455 U.S. at 393 (addressing timely filing a charge with the EEOC); *Johnson v. Runyon*, 47 F.3d 911, 917 (7th Cir. 1995) (addressing the 45-day deadline); *Albert v. Henderson*, 216 F.Supp.2d 1171, 1173–74 (D. Colo. 2002) (addressing the 45-day deadline).  The regulations provide for an extension of this deadline when the "individual shows . . . that he or she did not known and reasonably should not have known that the discriminatory matter or personnel action occurred."  *Id.* § 1614.105(a)(2).

Because Plaintiff's compliance with the 45-day deadline is analyzed under the 12(b)(6) standard, his factual allegations demonstrating his compliance "must be enough to raise a right to relief above a speculative level."  *Twombly*, 127 S.Ct. at 1974. Although Plaintiff clearly knew of Frink's failure to certify him as a blaster prior to mid-May 2004, he alleges that he did not suspect the discriminatory nature of the action until

he learned of the similar treatment of other Hispanic blasters. (2d Am. Compl. ¶¶ 34–35.) Based on this allegation, I conclude that he has alleged sufficient facts to raise the issue of whether he knew or should have known about the discriminatory action above the speculative level. Therefore, the 45-day deadline was possibly tolled until mid-May 2004—the date that Plaintiff learned of the failure to certify other Hispanic workers—and he complied with the 45-day deadline by contacting an EEO Counselor on June 8, 2004. Thus, dismissal of Plaintiff's claim based on the failure to certify him as a blaster is not warranted based on Plaintiff's failure to comply with the 45-day deadline.

2. <u>Adverse Employment Action</u>

Defendant argues for dismissal under Rule 12(b)(6) because Plaintiff's complaint fails to allege an adverse employment action upon which to base a discrimination claim. Defendant argues that Plaintiff's allegation of not receiving a blaster's certification does not constitute an adverse employment action because it did not deprive Plaintiff of a promotion, raise, or any other employment-related opportunity. Furthermore, Defendant argues, a blaster's certification was not required in Defendant's position at the time his certification was not renewed. Plaintiff responds that the failure to certify him as a blaster was an adverse employment action because "the possession of a blaster's certificate is a valuable employee asset in that it provides access to expanded work opportunities, promotion, increased pay and additional benefits." (*See* 2d Am. Compl. ¶ 12.)

A *prima facie* case for disparate treatment requires that the Plaintiff demonstrate "(1) membership in a protected class, (2) adverse employment action, and (3) disparate

treatment among similarly situated employees." *Orr v. City of Albuquerque*, 417 F.3d 1144, 1149 (10th Cir. 2005) (citing *Trujillo v. Univ. of Colo. Health Scis. Ctr.*, 157 F.3d 1211, 1215 (10th Cir. 1998)). The phrase "adverse employment action" is liberally construed in the Tenth Circuit. *Hilling v. Rumsfeld*, 381 F.3d 1028, 1031 (10th Cir. 2004) (citing *Sanchez v. Denver Pub. Schs.*, 164 F.3d 527, 531 (10th Cir. 1998)). An adverse employment action is determined on a "case-by-case approach" and requires examination into the "unique factors relevant to the situation at hand." *Sanchez*, 164 F.3d at 532 (citing *Jeffries v. Kansas*, 147 F.3d 1220, 1232 (10th Cir. 1998)). For example, conduct is adverse if it constitutes "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus. v. Ellerth*, 524 U.S. 742, 761 (1998) (addressing tangible employment action in vicarious liability context). This, however, is not an exhaustive list of what constitutes an adverse employment action and a case-by-case approach must always be used. *Hilling*, 381 F.3d at 1032–33. "One factor that strongly indicates a challenged action is an 'adverse employment action' is that the action causes 'harm to future employment prospects.'" *Id.* However, "'a mere inconvenience or an alteration of job responsibilities,' is not an adverse employment action." *Id.* at 1031 (citing *Sanchez*, 164 F.3d at 531).

In this case, Plaintiff has alleged that "the possession of a blaster's certificate is a valuable employee asset in that it provides access to expanded work opportunities, promotion, increased pay and additional benefits." (*See* 2d Am. Compl. ¶ 12.) Generally, a "formulaic recitation of the elements of a cause of action" is not sufficient to survive a 12(b)(6) motion to dismiss. *Twombly*, 127 S.Ct. at 1974. However, viewing

this somewhat formulaic recitation in combination with the other factual allegations in the complaint, I conclude that Plaintiff has alleged enough to "raise [his] right to relief above the speculative level." *Id.* In addition to the above allegation, Plaintiff alleges that the blasting certificates were awarded by the Rio Grande National Forest Service and indicated what levels of explosive work the person was qualified to work in. (2d Am. Compl. ¶¶ 9–10.) He also alleges that blasters had special skills that were "an asset to the forest service and play an essential part in maintaining forest [sic] system for the public." *Id.* ¶ 11. Indeed, part of his job as a trails construction coordinator, the position he apparently held both before and after his stint as the Regional Blasting Examiner, included blasting in two forests. Although I note that not every action taken by an employer that affects future employment opportunities constitutes an adverse employment action, these facts demonstrate that more than a de minimus effect on Plaintiff's future employment opportunities. *Hilling*, 381 F.3d at 1033. Thus, Plaintiff's allegations, viewed in combination under the Tenth Circuit's liberal standard, are sufficient to show that his failure to be certified may cause "harm to future employment prospects" and is, therefore, an adverse employment action. *See Hilling*, 381 F.3d at 1031–32.

    Accordingly, it is ordered:

1.     Defendant's Motion to Dismiss the complaint (Docket No. 32) is granted in part and denied in part.

2.     Plaintiff's claims based on shunning, request for blasting equipment, changing locks, or denial of permits necessary to use or transport explosives are dismissed with prejudice for failure to exhaust

administrative remedies.

3. Plaintiff's claim regarding the failure to certify him as a blaster remains pending.

DATED at Denver, Colorado, on July 31, 2008.

BY THE COURT:

s/ Walker D. Miller
United States District Judge